SMITH and another *v.* MERRIAM and another.

*(Circuit Court, D. Massachusetts. January 22, 1881.)*

1. STAY-STRIP—ANTICIPATION.

A stay made of a folded strip of leather for covering and strengthening seams of boots or shoes, and provided with marginal grooves for reception of the stitches, and beaded edges for protection of the same, is not patentable as an article of manufacture, in view of the prior existence and use of harness trimming, ladies' belts, and straps for pocket-books made of folded strips of leather, and provided with marginal grooves and beaded edges which served the similar purpose of receiving and protecting stitches.

2. SAME—RE-ISSUE.

Where the original patent described and showed that, by applying a stay-strip to the seam of a boot or shoe, there would be formed upon its under side a central longitudinal channel or recession, by virtue of its being saddled over the seam, a valid re-issue cannot be taken for a stay-strip having such a central recession formed in it beforehand to fit or hug the seam.

In Equity.

*Geo. L. Roberts & Bros.,* for complainants.

*E. P. Brown,* for defendants.

LOWELL, C. J. I have to-day decided, in a case between the parties to this suit,* that the plaintiffs' patent for a presser-foot adapted to sewing stay-strips over the outward turned seams of boots and shoes is valid. The present controversy relates to another patent granted to the plaintiff Sutherland, re-issue No. 7,510, for a stay-strip as a new article of manufacture. The stay-strip, as described, is a narrow piece of leather folded or doubled so as to fit over the projecting seam, and with a channel or groove to hug or fit that seam, and other grooves at the sides of the seam calculated to receive the stitches by which the stay is fastened to the boot or shoe. The projection of the seam raises a fillet, as it is called, or swell, which serves to protect the stitches, and this is done still further by the beads or swells or fillets which bound the grooves on the edges of the stay-strip. The specification explains one great advantage of a strip thus prepared to be that it can be sewed automatically to the boot or shoe without troubling the operator to guide it by hand so much as he must a strip of a different shape. He claims this stay-strip in its several forms.

The defendants make a stay-strip with beaded edges suited to receive the stitches. I cannot find in the article which they make any decided central groove or corrugation adapted to the seam. They do not, therefore, infringe the first claim or the third, but do come within the second, which is for the stay-piece with these side grooves. The decision, then, must depend upon the validity of the re-issued patent.

The original, No. 176,094, was for an improvement in stay-seaming boot or shoe uppers, and described the method of putting a stay, with channels for the stitches, over an outward turned seam, as contrasted with the old method of turning the seam inward and leaving it unprotected. I am unable to find in it any mention of automatic sewing, or of a central channel to hug or fit the seam. On the contrary, the method described is simply to put a folded or double strip over the seam and sew it there. This will form a channel in the finished work, as the model from the patent-office, when cut

*Ante, 713.

open, clearly shows; and one sort of channel formed by the separation of the edges of the folded strip is shown in the drawings; but neither of these comes up to the description of the re-issued patent. The former does not enable the strip to hug the seam during the process of sewing, for it is made by that process; the latter appears to be an accident, and forms no part of the re-issue as construed by either party.

The objections taken to the re-issue come to this: that it describes as a new article, to be made for the boot and shoe manufacturers, what the first patent did not fully describe, and which by that patent might be entirely made, as to all its distinctive features, in the very process of sewing, and, therefore, as an article of manufacture was incomplete, for no one could practically make a stay-strip for sale by ripping out the stitches.

The admitted or uncontradicted state of the art I understand to be this: Strips had been sewed over the seams of boots and shoes by hand, and by sewing machines. In one class of work, soft strips had been applied to outward turned seams with a rolling presser-foot, and the effect of the operation was to leave slight grooves or depressions near the edges of the finished and applied strip, which had the useful property of protecting the stitches, and a central swell over the seam. Grooved or beaded edges of leather strips, where stitches were laid, had been used in harnesses and in ladies' belts, and straps for pocket books, and other articles. One of the pieces of harness produced in evidence looks very much like the plaintiffs' stay-strip. In this state of the art, and of the plaintiffs' patents, I am of opinion that a stay-strip with beaded edges, to protect the stitches, could not be patented as a new article of manufacture, and that a stay-strip with a central recession formed beforehand, to fit or hug the seam, could not be patented by the re-issue.

Bill dismissed.